J-S16005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1791 MDA 2017 |

Appeal from the Decree October 23, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
84879

BEFORE:   BOWES, J., MURRAY, J., and PLATT, J.*

MEMORANDUM BY BOWES, J.:                     **FILED APRIL 30, 2018**

T.M. ("Mother") appeals from the decree entered October 23, 2017, which involuntarily terminated her parental rights to her minor son, J.M.D.M., born in March 2014.  Mother's counsel, Kelly S. Kline, Esquire, filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we grant counsel's petition to withdraw and affirm.[1]

J.M.D.M. became known to Berks County Children and Youth Services ("BCCYS") on April 2, 2015, after BCCYS received a report that the then-one-year-old child was behind on his immunizations and developmentally delayed.  He still was unable to crawl.  Additionally, BCCYS noted concerns with Mother's

---

* Retired Senior Judge assigned to the Superior Court.

[1] On September 11, 2017, the orphans' court terminated the parental rights of J.M.D.M.'s father, J.D., who did not appeal.

lack of appropriate parenting skills and supervision, her failure to provide for J.M.D.M.'s basic needs, the lack of stable and appropriate housing and employment, and concerns with Mother's mental health and substance abuse.

On May 20, 2015, the juvenile court adjudicated J.M.D.M. dependent and ordered that he be placed in foster care. On August 9, 2016, the court temporarily suspended Mother's supervised visitations with J.M.D.M. after it was reported that she fell asleep during visits and upon the discovery that her urine screen was positive for a controlled substance. The juvenile court ordered that visitations could resume once Mother provided evidence that she was sober and capable of providing her son with appropriate supervision.

On June 9, 2016, BCCYS filed a petition to terminate Mother's parental rights to J.M.D.M. Nearly one year later,[2] the court appointed counsel to represent mother and appointed a *guardian ad litem* to represent J.M.D.M. "pursuant to the provisions of the Adoption Act of Pennsylvania, . . . 23 Pa.C.S.A. [§] 2101 et seq."[3] Trial Court Order, 6/12/17, at 1. The orphans'

---

[2] The certified record does not explain the one-year delay. Although Mother twice voluntarily relinquished her parental rights to J.M.D.M., only to revoke her consents weeks later, she executed those ploys during September 2017, approximately fifteen months after BCCYS filed its petition to terminate her parental rights. Thus, while the orphans' court attempts to attribute the delay to Mother's antics, the certified record will not sustain that conclusion.

[3] The orphans' court's appointment of a guardian *ad litem* to represent J.M.D.M. during the contested termination proceedings does not comply with the specific dictates of the Adoption Act to appoint legal counsel. This Court will address *sua sponte* an orphans' court's failure to appoint counsel pursuant to 23 Pa.C.S. § 2313(a). ***See In re K.J.H.***, 2018 PA Super 37 *2 (Pa.Super.

court conducted a termination hearing on October 23, 2017. At the hearing, BCCYS presented the testimony of Cheri Kipp, the adoption caseworker assigned to Mother's case, and Mother testified on her own behalf. At the conclusion of the hearing, the orphans' court terminated Mother's parental rights to J.M.D.M. Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 22, 2018, Mother's counsel filed in this Court a petition to withdraw and **Anders** brief.

Before reaching the merits of Mother's appeal, we must address counsel's petition to withdraw. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa.Super. 2005). In **In re V.E.**, 611 A.2d 1267 (Pa.Super. 1992),

---

filed Feb. 20, 2018). In **In Re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017), our Supreme Court held that § 2313(a) required that **counsel** be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The High Court recognized, however, that the opinion did not overrule our holding in **In re K.M.**, 53 A.3d 781 (Pa.Super. 2012), insofar as a guardian *ad litem* who is an attorney may act as counsel so long as the dual roles do not create a conflict between the child's best interest, which is determined by the trial court, and the child's legal interest, which the High Court defined as synonymous with his or her preferred outcome.

Instantly, J.M.D.M.'s guardian *ad litem* supported the termination of Mother's parental rights as serving his best interests. Our review of the record does not reveal any conflict between this positon and J.M.D.M's legal interests. Indeed, beyond developing the strong familial bond with his pre-adoptive foster parents that we discuss in the body of this memorandum, three-year-old J.M.D.M. did not express a preferred outcome. Thus, remand is not required. **Cf. In re T.M.L.M.,** 2018 PA Super 87 (filed April 13, 2018) (remand for further proceedings when six-year-old child's preference was equivocal and the attorney neglected to interview the child to determine whether best interest and legal interest aligned).

this Court extended the **Anders** procedure to appeals from decrees involuntarily terminating parental rights. To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa.Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, an **Anders** brief must comply with the following requirements:

(1)   provide a summary of the procedural history and facts, with citations to the record;

(2)   refer to anything in the record that counsel believes arguably supports the appeal;

(3)   set forth counsel's conclusion that the appeal is frivolous; and

(4)   state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

In the instant matter, Mother's counsel filed a petition to withdraw certifying that she reviewed the record and determined that Mother's appeal was frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are frivolous, with citations to relevant legal authority. Counsel provided Mother a copy of the brief, and a letter advising her that she may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied substantially with the requirements of **Anders** and **Santiago**. Therefore, we may proceed to review the issues outlined in the **Anders** brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa.Super. 2015) (footnote omitted).

Counsel's **Anders** brief raises the following issues for our review.

A. Whether the honorable court erred as a matter of law by terminating [Mother's] parental rights to [J.M.D.M.]?

B. Whether the evidence presented by [BCCYS] was insufficient as a matter of law to support the honorable court's decision to terminate [Mother's] parental rights?

C. Whether the honorable court erred in and abused its discretion in terminating [Mother's] parental rights where [Mother] has obtained stable housing and has engaged in services such that

she was able to bring her newborn child home from the hospital?

***Anders*** brief at 4.

We review these claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to § 2511(a)(1), (2), (5), (8) and (b). We need only agree with the court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under § 2511(a)(1) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>>
>> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

As it relates to § 2511(a)(1), the pertinent inquiry for our review is as follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) (internal citations omitted)).

Although the six months immediately preceding the filing of the petition are the most critical to the analysis, "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004). Additionally, to the extent that the orphans' court based its decision to terminate parental rights pursuant to subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). In *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003), we explained, "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship."

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the trial court must then engage in three additional lines of inquiry: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (quoting *In re Adoption of Charles E.D.M.*, *supra* at 91).

Instantly, the orphans' court concluded that BCCYS presented clear and convincing evidence with respect to § 2511(a)(1). *See* Orphans' Court Opinion, 12/15/17, at 7. In sum, the court found that during the twenty-nine months J.M.D.M. was in placement, "Mother failed to perform her parental duties and has never been there for her son." *Id*.

Mother argues that "she should be permitted the opportunity to have [her son's] custody transferred to New Jersey, and be given the additional opportunity to raise him now that she is engaged in programs in New Jersey . . . [a]nd be given the opportunity to have" J.M.D.M. grow up with his half-brother, who resides with Mother in New Jersey.[4] Mother's Brief at 8.

Our review of the record supports the findings of the orphans' court. During the termination hearing, Cheri Kipp testified that Mother's compliance

---

[4] Mother gave birth to a son, J.M.D.M.'s half-sibling, in July 2017. Mother resides with a relative in New Jersey who supervises custody of that child. N.T., 10/23/17, at 17, 27.

with BCCYS's service objectives was minimal. BCCYS fashioned the following objectives for Mother: participate in parenting education, complete a mental health evaluation and comply with any recommended treatment, complete a domestic violence evaluation and comply with any recommended treatment, obtain stable and appropriate housing, keep BCCYS updated with any changes in residence or income, and cooperate with caseworker services. N.T., 10/23/17, at 9.

Mother never completed a mental health evaluation or enrolled in domestic violence counseling. *Id*. at 12. Moreover, Ms. Kipp testified that while Mother completed a drug and alcohol evaluation, she failed to follow-through with the recommended treatment, she was unable to provide four consecutive clean samples, and she tested positive for K2 (synthetic marijuana) during February 2017 and tetrahydrocannabinol (the primary ingredient in marijuana) after she gave birth to J.M.D.M.'s half-brother in September 2017. *Id*. at 11, 24-25, 28.

Mother did not obtain stable housing. Since May 2015, Mother has resided in at least fourteen different residences and has failed to update BCCYS when she moved. *Id*. at 9-10. Most recently, in September 2017, Mother relocated from Pennsylvania to New Jersey, where she gave birth to her second child. *Id*. at 9. Ms. Kipp also indicated that Mother has not been able to demonstrate that she can maintain stable employment. *Id*. at 10. Mother's counsel made no effort to challenge this evidence, and she conceded

on cross-examination that she is unemployed and receiving cash assistance through the Temporary Assistance for Needy Families program. *Id*. at 27.

Likewise, Mother remained uncooperative with BCCYS. *Id*. at 10. Ms. Kipp testified that although Mother had met with BCCYS service providers multiple times, she appeared very agitated at meetings and failed to accept responsibility for the reasons that J.M.D.M. came into placement. *Id*. With regard to visitation, Ms. Kipp testified that Mother attended only twenty-two supervised visitations for a total of forty-eight hours over the twenty-nine months that he was in placement. *Id*. at 10-11. Mother has not had physical contact with her son since July 2016. *Id*. at 11.

Finally, Mother failed to refrain from criminal activity. She not only recently pled guilty to retail theft charges, but she also failed to comply with the terms of her plea agreement. *Id*. Indeed, the record confirms that police detained Mother following the termination hearing due to her noncompliance with the terms of her plea agreement. *Id*. at 31.

The foregoing evidence demonstrates that Mother either refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition on June 9, 2016. Plainly, notwithstanding Mother's stated commitment to her son, the orphans' court accepted BCCYS's evidence that Mother made no effort to contact J.M.D.M. during the relevant six months. Since the certified record supports that finding, we will not disturb it.

Next, we consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted)).

The orphans' court concluded that BCCYS presented clear and convincing evidence that terminating Mother's parental rights would best serve J.M.D.M.'s needs and welfare pursuant to § 2511(b). Orphans' Court Opinion, 12/15/17, at 8.

Again, our review of the record supports the orphans' court's findings. Ms. Kipp testified that Mother last saw J.M.D.M. during July 2016, and that no

bond exists between Mother and son. N.T., 10/23/17, at 11. In contrast, J.M.D.M. has bonded with his foster parents, who are adoptive resources. *Id*. at 12. The child is thriving in the foster home, where he has resided for nine months. J.M.D.M. looks to his foster parents for all of his basic needs, including safety, security, and comfort. *Id*. He is comfortable in the home and has demonstrated a marked improvement in his behavioral, physical, and emotional wellbeing. *Id*. at 12-13. Finally, Ms. Kipp opined that terminating Mother's parental rights would not be detrimental to J.M.D.M.'s best interest because "due to her limited contact and commitment to [J.M.D.M.], any bond that [previously] developed has now deteriorated and no longer exists." *Id*. at 13.

Our independent review of the record does not reveal any non-frivolous issues that were preserved for review. ***See Flowers***, ***supra*** at 1250. We therefore grant counsel's petition to withdraw, and affirm the October 23, 2017 decree terminating Mother's parental rights to J.M.D.M.

Petition to withdraw as counsel filed by Kelly S. Kline, Esquire is granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/30/2018